**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| RONALD IAN BOATWRIGHT, | : | |
| | : | |
| Petitioner, | : | Civil No. __:17-cv-_____ |
| | : | Crim No. 1:11-cr-00252-WWC-1 |
| v. | : | **MEMORANDUM OF LAW IN** |
| | : | **SUPPORT OF PETITION FOR A** |
| D. LEU, Warden, | : | **WRIT OF HABEAS CORPUS** |
| FCI Fairton, | : | **UNDER 28 U.S.C. § 2241** |
| | : | |
| Respondent. | : | |

COMES Petitioner, RONALD IAN BOATWRIGHT ("Boatwright"),

appearing *pro se*, and in support of this petition would show as follows:

## I. STATEMENT OF JURISDICTION

Title 28 United States Code, Section 2241 confers jurisdiction on district courts

to issue writs of habeas corpus in response to a petition from a state or federal

prisoner who "is in custody in violation of the Constitution or laws or treaties of the

United States." 28 U.S.C. 2241(a) and (c)(3). A petition for habeas corpus under 28

U.S.C. § 2241 must be filed in the district of confinement. See *United States v. Foy*,

803 F.3d 128 (3rd Cir., 2015). A federal prisoner must challenge the legality of his

detention by motion under 28 U.S.C. § 2255, but may challenge the manner or

execution of his sentence under 28 U.S.C. § 2241. See *Cardona v. Bledsoe*, 681 F.3d

533 (3rd Cir. 2012). However, a prisoner may also challenge the legality of his

detention under § 2241 if he falls within the "savings clause" of § 2255, which states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e); *Manna v. Schultz*, 591 F.3d 664 (3rd Cir. 2010). Thus, through the § 2255 "savings clause" vehicle, a petitioner may seek habeas relief under § 2241 where he can show that § 2255 provides an "inadequate or ineffective" means for challenging the legality of his detention. See *Manna v. Schultz*, 591 F.3d 664 (3rd Cir. 2010).

## II. STATEMENT OF THE GROUND FOR RELIEF

Whether, in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016), *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016) and *Holt v. United States*, (No. 16-1793) (7th Cir. Dec. 13, 2016), Boatwright's prior convictions do not qualify him as a career offender requiring resentencing without the career offender enhancement.

## III. STATEMENT OF THE CASE

### A.   Relevant Procedural Background

On August 24, 2011, a federal grand jury sitting in the United States District Court for the Middle District of Pennsylvania, Harrisburg Division, returned a two

(2) count Indictment charging Boatwright. See Doc. 1.[1] Count 1s charged Boatwright with Unlawful Distribution of Cocaine Base and Aiding & Abetting, in violation of 21 U.S.C.§ 841(a)(1) and18 U.S.C. § 2. *Id.* Count 2 charged Boatwright with Conspiracy to Distribute Cocaine Base, in violation of 21 U.S.C. § 846. *Id.*

On July 16, 2012, a Change of Plea Hearing was held and Boatwright entered a guilty plea as to Count 2 of the Indictment, pursuant to a written Plea Agreement. See Docs. 33 & 35.

On January 1, 2013, Boatwright was sentenced to 110 months imprisonment, 3 years of Supervised Release, a $1,000.00 fine, and a Mandatory Special Assessment Fee of $100. See Doc. 44.

On August 28, 2015,  Boatwright filed a Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(2) & Amendment 782 ("782 Motion"). See Doc. 49.

On May 17, 2016, the Court issued an Order denying Boatwright's 782 Motion. See Doc. 57.

---

[1]

"Doc." refers to the Docket Report in the United States District Court for the Middle District of Pennsylvania, Harrisburg Division in Criminal No. 1:11-cr-00252-WWC-1, which is immediately followed by Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

## B.   **Statement of the Relevant Facts**

### 1.   Offense Conduct

The following information was obtained from the Assistant United States

Attorney and investigative reports:

Law enforcement agents were informed by a confidential informant ("CI") that Boatwright was involved in the unlawful distribution of crack cocaine. Utilizing a CI and an undercover officer ("UC"), agents made two controlled purchases of crack cocaine from Boatwright.

Specifically, on April 13, 2011, the CI and UC purchased .42 grams of crack cocaine from Boatwright and on April 21, 2011, they purchased .46 grams of crack cocaine. Each sale was for $60.

On July 11, 2011, a CI purchased $100 worth of crack cocaine (approximately 1 gram) from Boatwright. After Boatwright drove from the location of the crack cocaine sale, a traffic stop was initiated by investigators. Boatwright was arrested on the two prior delivery charges, and was found in possession of $12,173, a laptop computer, and two cell phones.

Boatwright was advised of his Miranda rights and waived them. He acknowledged the prior sales or crack cocaine and the cocaine sale immediately preceding his arrest. He further admitted to being a crack cocaine distributor and that he was headed to New York to purchase drugs when he was pulled over. Boatwright was placed in jail, however, posted, bail and was released.

On July 13, 2011, two days after posting bail on prior drug delivery charges, law enforcement agents, utilizing a CI, purchased $60 worth of crack cocaine from  Boatwright.

On August 16, 2011, Boatwright was arrested on a supervised release
violation warrant. During a search incident to arrest, investigators recovered a scale, $9

See PSR ¶¶ 5-11.

### 2.     Plea Proceeding and Plea Agreement

On July 16, 2012, a Change of Plea Hearing was held before Honorable Judge

William W. Caldwell. See Doc. 35. Boatwright entered a guilty plea as to Count 2 of

the Indictment, pursuant to a written Plea Agreement. See Doc. 33. In exchange of

Boatwright's guilty plea, the government agreed to move for dismissal of any

remaining counts of the indictment in this case. *Id.* at 3. Also, the government agreed

to recommend to the Court that Boatwright receive a 2-level reduction for acceptance

of responsibility. *Id.* at 7. The parties agreed that pursuant to Federal Rules of

Criminal Procedure 11(c)(1)(c) that a sentence of at least 100 but no more than 120

months imprisonment is appropriate disposition of this case. *Id.* at 7-8. The case was

referred to the Probation Office for the preparation of PSR.

### 3.     Presentence Report Recommendations

On September 10, 2012, the Probation Office prepared the PSR. The 2011

edition of the Guidelines Manual was used in calculating Boatwright's offense level.

See PSR ¶ 15. Boatwright sold approximately 14 grams of cocaine base and was

found in possession of $13,088. The currency is equivalent to approximately 130

grams of cocaine base (1 gram of cocaine base sells for $100). Because the amount of cocaine base is at least 112 but less than 196 grams, the base offense level is 28, pursuant to USSG § 2D1.1. See PSR ¶ 16. Boatwright's Adjusted Offense Level is 28. See PSR ¶ 21. Boatwright is considered a career offender because he was at least 18 years old at the time of the instant offense, the instant offense is a felony controlled substance offense, and Boatwright has at least 2 prior felony convictions for either a crime of violence or a controlled substance offense. Because the Adjusted Offense Level of 28 is less than that of a career offender, the career offender level of 32 is used, pursuant to USSG § 4B1.1(b)(3). See PSR ¶ 22. Boatwright received a two (2) level reduction for acceptance of responsibility, pursuant to USSG § 3E1.1(a). See PSR ¶ 23. The PSR calculated Boatwright's Total Offense Level to be 30. See PSR ¶ 14. He has a total of 8 criminal history points, which results in a Criminal History Category of IV. However, because Boatwright is a career offender, his Criminal History Category is automatically VI. See PSR ¶ 31. Based on a Total Offense Level of 30 and a Criminal History Category VI, the custody range is 168 - 210 months (Zone D), pursuant to the Sentencing Table in Chapter Five, Part A. See PSR ¶ 57. Should the Court accept the Rule 11(c)(1)(C) agreement, the Plea Agreement binds the Court to impose a sentence of 100 to 120 months imprisonment. See PSR ¶ 58. Boatwright filed Objections and an Addendum was prepared on November 28, 2012.

4.    Sentencing Proceeding

On January 1, 2013, a Sentencing Hearing was held before Honorable Judge William W. Caldwell. See Doc. 44. The Court adopted the factual findings and advisory guideline applications in the PSR and determined that Boatwright was a Career Offender with a Total Offense Level of 30 in Criminal History Category VI, yielding and advisory guideline range of 168 to 210 months. The Court sentenced Boatwright to 110 months imprisonment, mid-range of the sentence pursuant to the C-Plea Agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure; 3-year supervised release; and pay a fine of $1,000 and a mandatory special assessment fee of $100. See Doc. 46. Count 1 of the Indictment was dismissed on the motion of the United States. *Id.* No direct appeal was filed in this case.

## VI. **DISCUSSION**

As a preliminary matter, Boatwright respectfully requests that this Court be mindful that *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Fantone v. Latini*, 780 F.3d 184 (3rd Cir. 2015); *Estelle v. Gamble*, 429 U.S. 97 (1976)(same); and *Haines v. Kerner*, 404 U.S. 519 (1972)(same).

**In Light of *Mathis v. United States*, 136 S. Ct. 2243 (2016) and *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016), Boatwright's Prior Convictions Do Not Qualify Him as a Career Offender, Requiring Resentencing Without the Career Offender Enhancement.**

7

In order for Boatwright to proceed in this matter, he must overcome the "savings clause" of § 2255(e). Recently, the United States Court of Appeals for the Seventh Circuit decided *Holt v. United States*, (No. 16-1793) (7th Cir. Dec. 13, 2016). In *Holt*, the defendant was convicted of possessing a firearm despite prior convictions that barred gun ownership. See 18 U.S.C. §922(g)(1). Several of those convictions led the district court to deem him an armed career criminal ("ACCA"), and impose a 200-month sentence. While Holt's appeal was pending, the Court held that the version of the Illinois burglary statute under which he had been convicted was indeed not a "violent felony" because it did not satisfy the definition of "burglary" used in *Mathis v. United States*, 136 S. Ct. 2243 (2016), for indivisible statutes. See *United States v. Haney*, 840 F.3d 472 (7th Cir. 2016). The government conceded that *Mathis* was retroactive on initial § 2255 Motions. The Court held that Section 2255(a) allows a district court to reduce a sentence that exceeds the statutory maximum, and substantive decisions such as *Mathis* presumptively apply retroactively on collateral review. See *Holt*, (No. 16-1793) (7th Cir. Dec. 13, 2016). See also, e.g., *Davis v. United States*, 417 U.S. 333 (1974); *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). Because the argument being made here is statutory rather than constitutional and does not rest on any other retroactive rule of constitutional law, § 2255 is "inadequate or ineffective" in this case and his petition should be entertained by this Court.

8

In this case, the District Court erred in determining that Boatwright was a career offender within the meaning of USSG § 4B1.1(a), which provides:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Boatwright was over 18 years of age when he committed this offense, and it was a "controlled substance offense" within the meaning of USSG § 4B1.1(a). His sentence was therefore subject to being enhanced under the "Career Offender" Guidelines provision, § 4B1.1, if he had "at least two prior felony convictions of either a controlled substance offense or a crime of violence. "The PSR construed USSG § 4B1.2, which defines a "controlled substance offense" and a crime of violence."

In *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016), defendant Hinkle appealed his sentence, contending that the district court erred in determining that he was a career offender within the meaning of USSG § 4B1.1(a). Hinkle argued that neither of his prior Texas convictions, one for burglary and the other for delivery of a controlled substance, constituted a predicate offense under the career-offender guidelines provision. The Court's decision turned upon whether the particular Texas

statutes at issue were divisible such that a court may use the modified categorical approach to determine whether a defendant convicted under Texas law of knowingly delivering a controlled substance was convicted of delivery by one of the particular means proscribed under Texas law. In light of the Supreme Court's recent decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016), the *Hinkle* Court concluded that his conviction for delivery of a controlled substance is not a "controlled substance offense" within the meaning of the Guidelines, and therefore, the career-offender enhancement did not apply based on the record presently before the Court. The Court vacated Hinkle's sentence and remanded for resentencing without the career offender Guideline enhancement.

See also, *United States v. Tanksley*, (No. 15-11078) (5th Cir. Jan. 18, 2017). In *Tanksley*, and in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016), and *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016), the Fifth Circuit granted Tanksley's motion for panel rehearing to decide whether *United States v. Ford*, 509 F.3d 714 (5th Cir. 2007), still represents the law. In *Ford*, the Court held that a conviction for possession with intent to deliver a controlled substance under section 481.112(a) of the Texas Health and Safety Code ("Section 481.112(a)") qualifies as a "controlled substance offense" under the Guidelines. In *Tanksley*, the defendant pleaded guilty to violating 18 U.S.C. § 922(g), which prohibits convicted felons from possessing

firearms. At sentencing, the district court found that a prior conviction under Section 481.112(a) for possession with intent to deliver a controlled substance constituted a "controlled substance offense" within the meaning of the Guidelines, § 4B1.1. Tanksley objected to this particular enhancement but conceded his objection was foreclosed by *Ford*. Shortly before the Court affirmed Tanksley's conviction and sentence, the Supreme Court issued *Mathis*. Based on that decision and the decision in *Hinkle*, Tanksley moved for panel rehearing, which was granted. In agreeing that *Hinkle* is "merely a straightforward application of *Mathis*," the Court held that *Ford* could not stand. As such, Tanksley's conviction under that statute did not qualify as a controlled substance offense under the Guidelines and the Court vacated and remanded Tanksley's case for resentencing.

Section 4B1.2 of the Guidelines defines a controlled substance offense as follows:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

USSG § 4B1.2(b).

11

In determining whether a prior conviction is included within an offense defined or enumerated in the Guidelines, courts have generally looked only to the elements of the prior offense [the "categorical approach"], not to the actual conduct of the defendant in committing the offense ["modified categorical approach"]. The Eleventh Circuit employs the so-called "categorical approach." See *Donawa v. U.S. Attorney Gen.*, 735 F.3d 1275 (11th Cir. 2013). In *Donawa*, the defendant, a native and citizen of Antigua, petitioned for review of the BIA's affirmance of an IJ's determination that he was not eligible for cancellation of removal because he committed an aggravated felony. The Court concluded that Fla. Stat. § 893.13(1)(a)(2), as amended by Fla. Stat. § 893.101, did not qualify as a drug trafficking aggravated felony under the categorical approach. The Court further concluded as well that it would be improper to engage the modified categorical approach for this statute because it is not divisible within the meaning of *Descamps*. Therefore, Petitioner and others convicted under this statute could still be able to meet their burden to demonstrate eligibility for cancellation of removal, and should be given a chance to shoulder that burden. Accordingly, the Court granted the petition, vacating and remanding for further proceedings.

In *Hinkle*, under the categorical approach, the government conceded that a conviction of delivering a controlled substance "by offering to sell" that substance,

the crime would not come within the definition of a "controlled substance offense"
under § 4B1.2.

The question in *Hinkle* was whether the Texas statutes under which the
defendant was convicted were "divisible." See, e.g., *Descamps v. United States*, 133
S. Ct. 2276, 2281 (2013). A statute is "divisible" when it "sets out one or more
elements of the offense in the alternative—for example, stating that burglary involves
entry into a building or an automobile." *Id.*

As the Supreme Court explained in *Descamps*:

"[i]f one alternative (say, a building) matches an element in the generic
offense, but the other (say, an automobile) does not, the modified
categorical approach permits sentencing courts to consult a limited class
of documents, such as indictments and jury instructions, to determine
which alternative formed the basis of the defendant's prior conviction."

*Id.*

Earlier this year, the United States Supreme Court decided *Mathis v. United
States*, 136 S. Ct. 2243 (2016). In *Mathis*, the Supreme Court set forth how a court
determines whether a statute is divisible and therefore whether, in employing the
modified categorical approach, documents pertaining to the prior conviction may be
used to ascertain if that conviction comes within a federal definition of an offense or
has the elements of an enumerated offense. In *Mathis*, an Iowa burglary statute
criminalized entry into or onto locations that included a building, a structure, land,

13

water, or an air vehicle. *Id.* at 2250. Because generic burglary does not proscribe burglary of vehicles, the Iowa offense was overly inclusive; it included conduct that was not generic burglary. *Id.* at 2256. The sentencing court considered documents pertaining to *Mathis'* prior convictions, which reflected that he had burgled structures not vehicles, and the district court concluded that the sentencing enhancement under the ACCA applied. *Id.* at 2250. The Eighth Circuit affirmed, holding that whether the itemized list of places "amount[ed] to alternative elements or merely alternative means to fulfilling an element, the statute is divisible, and we must apply the modified categorical approach." *Mathis*, 786 F.3d 1068, 1075 (8th Cir. 2015). The Supreme Court reversed the Eighth Circuit because the Iowa Supreme Court had held that the Iowa statute sets forth "alternative method[s] of committing [the] single crime," and an Iowa "jury need not agree on which of the locations was actually involved." *Mathis*, 136 S. Ct. at 2250 (citing *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981)).

The *Mathis* decision instructs that there is a difference between alternative elements of an offense and alternative means of satisfying a single element. Elements must be agreed upon by a jury. When a jury is not required to agree on the way that a particular requirement of an offense is met, the way of satisfying that requirement is a means of committing an offense not an element of the offense. See *Chavez-Alvarez v. Attorney Gen. U.S.*, (No. 16-1663) (3rd Cir. 2017).

In light of *Mathis*, it must be determined whether "listed items" in a state statute "are elements or means," and if "a state court decision definitively answers the question" the inquiry is at an end. See *Mathis*, 136 S. Ct. at 2256. The Iowa statute was clear in *Mathis*. As the Supreme Court held in *Mathis*, "[w]hen a ruling of that kind exists, a sentencing judge need only follow what it says." *Id.* at 2256. It is therefore not necessary to utilize the other means set forth in *Mathis* for discerning whether alternatives listed in a statute are elements or means. *Id.*

If the elements of the defendant's crime of conviction criminalizes a "greater swath of conduct than the elements of the relevant [Guidelines] offense" [*Mathis*, 136 S. Ct. at 2251] . . . [T]his "mismatch of elements" means that his conviction for the knowing possession with intent to deliver is not a controlled substance offense under the Guidelines. *Id.* That prior conviction cannot serve as a predicate offense under the Career Offender Guideline provision, which is § 4B1.1. *Id.*

In determining whether a prior conviction is included within an offense defined or enumerated in the Guidelines, courts have generally looked only to the elements of the prior offense, not to the actual conduct of the defendant in committing the offense. See *United States v. Abbott*, 748 F.3d 154 (3rd Cir. 2014) .

In this case, on July 16, 2012, at the Change of Plea Hearing, Boatwright pled guilty to Count 2 of the Indictment. See Doc. 35. The PSR deemed Boatwright as a

15

career offender. As such, the Court adopted the PSR's recommendation. Boatwright's Total Offense Level to be 30 in Criminal History Category VI under the career offender Guideline, yielded an advisory Guideline range of 168 to 210 months. The Court sentenced Boatwright to 110 months imprisonment, mid-range sentence pursuant to a C-Plea Agreement under Rule 11(c)(1)(c); 3-year supervised release; and pay a $1,000 fine and a special assessment fee of $100. See Doc. 46.

Boatwright was deemed to be a Career Offender because he was over 18 years old when he began his participation in the instant offense, which is a "controlled substance offense" as defined by USSG §4B1.1(b), and he has at least two prior convictions for controlled substance offenses, as follows:

(1) On September 12, 2000, Possession With Intent to Distribute Cocaine/Marijuana and Possession of a Firearm by a Minor, Dauphin County Court, Harrisburg, PA: Case No. 336-2000. Boatwright pled guilty and was sentenced to 12-36 months imprisonment; and

(2) On February 20, 2004, Possession With Intent to Distribute Cocaine Base and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, U.S. District Court, Harrisburg, PA:  Case No. 1: CR-03-361-01. Boatwright pled guilty and was sentenced to 84 months imprisonment.

If only the PSR did not consider Boatwright's career offender enhancement, he would have not signed the 100 to 120-month Plea Agreement.

See *Freeman v. United States*, 131 S.Ct. 2685 (2011). The Sentencing Reform Act of 1984 ("Act"), 18 U.S.C. 3551 et seq., called for the creation of Sentencing Guidelines to inform judicial discretion in order to reduce unwarranted disparities in federal sentencing. The Act allowed retroactive amendments to the Guidelines for cases where the Guidelines became a cause of inequality. When a retroactive Guideline amendment was adopted, section 3682(c)(2) permitted defendants sentenced based on a sentencing range that had been modified to move for a reduced sentence. In *Freeman*, petitioner was indicted for various crimes, including possessing with intent to distribute cocaine base, and entered into a Federal Rule of Criminal Procedure 11(c)(1)(C) agreement to plead guilty to all charges where the Government, in return, agreed to a 106 month sentence. At issue was whether defendants who enter into plea agreements that recommended a particular sentence as a condition of the guilty plea could be eligible for relief under section 3682(c)(2). The Court held that the text and purpose of the statute, Rule 11(c)(1)(C), and the governing Guidelines policy statements compelled the conclusion that the district court had authority to entertain section 3582(c)(2) motions when sentences were imposed in light of the Guidelines, even if the defendant entered into an Rule 11(c)(1)(C) agreement. The Court also held that petitioner's sentencing hearing

17

transcript revealed that the District Court expressed its independent judgment that the sentence was appropriate in light of the applicable Guidelines range. Therefore, the District Court's decisions was "based on" that range within section 3682(c)(2)'s meaning. Accordingly, the judgment of the Court of Appeals was reversed by the Supreme Court and the case remanded for further proceedings.

Justice Sotomayor concluded that if an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) ("(C) agreement") expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment, and that range is subsequently lowered by the Sentencing Commission, the prison term is "based on" the range employed and the defendant is eligible for sentence reduction under 18 U. S. C. §3582(c)(2).

(a) The term of imprisonment imposed by a district court pursuant to a (C) agreement is "based on" the agreement itself, not on the judge's calculation of the Guidelines sentencing range. To hold otherwise would be to contravene the very purpose of (C) agreements—to bind the district court and allow the Government and the defendant to determine what sentence he will receive.

(b) This does not mean, however, that a term of imprisonment imposed under a (C) agreement can never be reduced under §3582(c)(2). Because the very purpose of a (C) agreement is to allow the parties to determine the defendant's sentence, when

18

the agreement itself employs a particular Guidelines sentencing range applicable to the charged offenses in establishing the term of imprisonment imposed by the district court, the defendant is eligible to have his sentence reduced under §3582(c)(2).

(c) Freeman is eligible. The offense level and criminal history category set forth in his (C) agreement produce a sentencing range of 46 to 57 months; it is evident that the parties combined the 46-month figure at the low end of the range with the 60-month mandatory minimum sentence under §924(c)(1)(A) to establish the 106-month sentence called for in the agreement. Under the amended Guidelines, however, the applicable sentencing range is now 37 to 46 months. Therefore, Freeman's prison term is "based on" a sentencing range that "has subsequently been lowered by the Sentencing Commission," rendering him eligible for sentence reduction.

Kennedy, J., announced the judgment of the Court and delivered an opinion, in which Ginsburg, Breyer, and Kagan, JJ., joined. Sotomayor, J., filed an opinion concurring in the judgment.

In *Peugh v. United States*, 133 S.Ct. 2072, 186 L.Ed.2d 84, 81 USLW 4372 (2013) "[i]n the usual sentencing, ... the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Freeman v. United States*, 564 U.S. ——, ——, 131 S.Ct. 2685 2692, 180 L.Ed.2d 519 (2011)

(plurality opinion). Even if the sentencing judge sees a reason to vary from the Guidelines, "if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, then the Guidelines are in a real sense the basis for the sentence." Ibid. (emphasis added). See also *id.*, at ——, 131 S.Ct., at 2695 (Sotomayor, J., concurring in judgment) (stating that outside the context of a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement, "in the normal course the district judge's calculation of the Guidelines range applicable to the charged offenses will serve as the basis for the term of imprisonment imposed"). That a district court may ultimately sentence a given defendant outside the Guidelines range does not deprive the Guidelines of force as the framework for sentencing. Indeed, the rule that an incorrect Guidelines calculation is procedural error ensures that they remain the starting point for every sentencing calculation in the federal system.

Absent the career offender enhancement, Boatwright Base Offense Level would have been level 28. Boatwright received a two (2) level reduction for acceptance of responsibility. His Total Offense Level will be 26 in Criminal History Category IV, which would yield an advisory Guideline range of 92 to 115 months imprisonment. Furthermore, Boatwright would have been qualified to received a two-level reduction pursuant to 18 U.S.C. § 3582(c)(2) & Amendment 782, meaning his Total Offense Level will be decreased to 24 in Criminal History Category IV,

20

yielding an advisory guideline range of 70 to 87 months imprisonment, a significantly less harsh guideline range, and definitely lower than the 110-month imprisonment pursuant to the C-Plea Agreement.

## VI. **CONCLUSION**

For the above and foregoing reasons, Boatwright's sentence must be vacated for resentencing without the career offender enhancement. In the alternative, an evidentiary hearing should be held so that Boatwright may further prove his meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

Respectfully submitted,

Dated: June 8, 2017

RONALD IAN BOATWRIGHT
REG. NO. 12309-067
FCI FAIRTON
FEDERAL CORR. INSTITUTION
P.O. BOX 420
FAIRTON, NJ  08320
Appearing *Pro Se*